[Civ. No. 1707. Fifth Dist. May 9, 1973.]

CHARLES K. VIELEHR, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD et al., Defendants and Respondents.

## COUNSEL

Walter W. Taylor, Wayne N. Stephenson, Allen R. Link, Robert J. Sullivan and Daniel Dodge for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Joel Carey, Deputy Attorney General, for Defendants and Respondents.

## OPINION

**BROWN (G. A.), P. J.**—This case deals with the question of whether appellant, who was employed by the State of California in the Department of Human Resources Development as a tax representative trainee[1] can be legally dismissed under the provisions of Government Code section 19572, subdivision (t),[2] because of his conviction upon a charge of possession of marijuana while off the job, without more.

On August 7, 1970, appellant was convicted on his plea of guilty of a violation of section 11530 of the Health and Safety Code (possession of marijuana) and was sentenced to two years formal probation with 90 days' jail sentence suspended except for the period from 7 p.m. Friday, Sep-

---

[1]The California State Personnel Board job specification defines the position of tax representative trainee as follows: "THE TAX REPRESENTATIVE TRAINEE is a recruiting and training level in this series. Under close supervision as a learner, assists with the more routine phases of enforcing tax, licensing, or other laws, rules, or regulations; assists in collecting delinquent taxes, fees, and returns; and participates in training in order to learn the work of the agency to which assigned."

[2]Government Code section 19572 provides in pertinent part: "Each of the following constitutes cause for discipline of an employee, or person whose name appears on any employment list:

" . . . . . . . . . . . . .

"(t) Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to his agency or his employment."

tember 11, 1970, to 5 a.m. Monday, September 14, 1970. He lost no time from the job.

On October 29, 1970, appellant, who had then been employed for over two years as a tax representative trainee, received a written notice of punitive action from the Department of Human Resources Development dismissing him effective 5 p.m. November 2, 1970. The notice recited the marijuana conviction as the basis of the discharge and stated: "5. Your position as Tax Representative Trainee requires a great amount of public contact with a segment of the community made up primarily of employers. One of your functions in your position is to establish a rapport with these individuals based on a mutual feeling of respect.

"You are a representative of the Department and any actions which tend to discredit you personally in the eyes of those you come into contact with cannot help but bring discredit to the entire Department.

"The knowing commission of an illegal act without just cause shows a lack of respect for authority, particularly governmental authority. You cannot urge people to comply with Departmental rules and regulations while you yourself have shown a lack of desire to comply with governmental rules."

In subsequent proceedings before a hearing officer of the State Personnel Board, a transcript of which is before this court, the hearing officer rendered a proposed decision sustaining the dismissal. The findings and decision of the hearing officer were adopted by the State Personnel Board.

Pursuant to Code of Civil Procedure section 1094.5, the appellant filed a petition in administrative mandamus in the superior court. No evidence was taken by the court. The cause was submitted upon the record before the State Personnel Board and arguments of counsel. The petition was denied without opinion on April 29, 1971, and the cause is before this court upon an appeal from the judgment denying the petition.

■ Our function in reviewing a decision of the State Personnel Board is defined in *Blake* v. *State Personnel Board* (1972) 25 Cal.App.3d 541, 551 [102 Cal.Rptr. 50]: ". . . 'Respondent Board is a state-wide administrative agency deriving its adjudicating power from section 3 of article XXIV of the Constitution. Consequently, its factual determinations must be upheld by a reviewing court if they are supported by substantial evidence [citation] and all legitimate and reasonable inferences must be drawn in support of such findings [citations]. . . .'" (See *Gee* v. *California State Personnel Bd.* (1970) 5 Cal.App.3d 713, 717 [85 Cal.Rptr. 762].)

There was no evidence before the State Personnel Board other than

appellant's conviction of possession of marijuana. The hearing officer stated in his proposed decision: "The acts resulting in appellant's criminal conviction and the conviction itself constitute failure of good behavior within the meaning of Government Code Section 19572 (t) and warrant the dismissal action taken by the Department."

Findings were not requested or made in the superior court (Code Civ. Proc., § 632, subd. 1). Findings having been waived, this court must infer in support of the judgment that the trial court found that the conduct referred to constituted failure of good behavior which was of such a nature that it caused discredit to appellant's agency or department within the meaning of Government Code section 19572, subdivision (t), (see fn. 2) and that there was substantial evidence to support that finding. (*Comings* v. *State Bd. of Education* (1972) 23 Cal.App.3d 94, 98, fn. 4 [100 Cal. Rptr. 73]; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 310, p. 3118.)
The core of the problem, therefore, is whether under precedent and in reason the conviction of possession of marijuana, standing alone, constitutes substantial evidence of a failure of good behavior outside duty hours which is of such a nature that it causes discredit to the agency or to appellant's employment.

One of appellant's contentions has been resolved against him by the Supreme Court in *Nightingale* v. *State Personnel Board* (1972) 7 Cal.3d 507 [102 Cal.Rptr. 758, 498 P.2d 1006] since the briefs were filed. Appellant argues that there must be substantial evidence presented to show that the public was aware of his alleged failure of good behavior and that the public awareness caused actual discredit to the agency. In *Nightingale,* the court expressly held that the misbehavior under subdivision (t) does not have to be publicly known, resulting in actual discredit to the agency. (See pp. 513-514.)

Other principles established by *Nightingale* are germane to the resolution of the principal issue in this case. The Supreme Court said that subdivision (t) can be saved from being unconstitutionally vague by "a more precise judicial construction and application of the statute in conformity with the legislative objectives." The court then proceeded to quote with approval the following language from *Orlandi* v. *State Personnel Bd.* (1968) 263 Cal.App.2d 32, 37 [69 Cal.Rptr. 177]: ". . . 'The first 19 subdivisions of section 19572, (a) through (s), list specific kinds of conduct which, if committed, constitute causes for discipline. It is obvious that they do not exhaust the kind of conduct which can be detrimental to state service. Subdivision (t) relates to other failure of good behavior and is a catchall to include situations and acts which do not easily fit into the 19 specific

causes. *The failure of good behavior must be of such a nature that it reflects upon the employee's job and cannot be just any behavior which the agency might consider improper.'* (263 Cal.App.2d at p. 37; italics added.)" (*Nightingale* v. *State Personnel Board, supra,* 7 Cal.3d 507, at p. 512.)

This limitation on the application of section 19572 was applied in *Johnson* v. *County of Santa Clara* (1973) 31 Cal.App.3d 26, at page 32 [106 Cal.Rptr. 862], where it is said: " 'In determining whether an employee should be disciplined, whatever the cause, the overriding consideration is whether the conduct harms the public service.' [Citation.] 'If the misconduct bears some rational relationship to the employment and is of a character that can reasonably result in the impairment or disruption of public service,' the employee may be disciplined. [Citation.]" (See also *Blake* v. *State Personnel Board, supra,* 25 Cal.App.3d 541, 550-551.)

A like restriction has been applied in cases relating to the disciplining of teachers. (*Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375]; *Comings* v. *State Bd. of Education, supra,* 23 Cal.App.3d 94.) Since the Supreme Court in *Nightingale* (at p. 512) said that subdivision (t) has been limited in conformance with the holding in the leading case dealing with the disciplining of teachers (*Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214), we turn briefly to the consideration of that case and the case of *Comings* v. *State Bd. of Education, supra,* 23 Cal.App.3d 94.

Under Education Code section 13202, the State Board of Education is authorized to take appropriate disciplinary action for "immoral or unprofessional conduct . . . or for evident unfitness for service."

In *Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214, the only proof was that the teacher had committed four separate acts of homosexual conduct with a fellow teacher over a period of one week. The court held that the teacher's conduct could not constitute immoral or unprofessional conduct or conduct involving moral turpitude which per se gave grounds to discipline the teacher unless such conduct indicated his unfitness to teach. The court elaborated: "We therefore conclude that the Board of Education cannot abstractly characterize the conduct in this case as 'immoral,' 'unprofessional,' or 'involving moral turpitude' within the meaning of section 13202 of the Education Code unless that conduct indicates that the petitioner is unfit to teach. In determining whether the teacher's conduct thus indicates unfitness to teach the board may consider such matters as the likelihood that the conduct may have adversely affected students or fellow teachers, the degree of such adversity anticipated, the proximity or

remoteness in time of the conduct, the type of teaching certificate held by the party involved, the extenuating or aggravating circumstances, if any, surrounding the conduct, the praiseworthiness or blameworthiness of the motives resulting in the conduct, the likelihood of the recurrence of the questioned conduct, and the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers. These factors are relevant to the extent that they assist the board in determining whether the teacher's fitness to teach, i.e., in determining whether the teacher's future classroom performance and overall impact on his students are likely to meet the board's standards." (At pp. 229-230; fns. omitted.)

The four-justice majority in that case concluded that as a matter of law, unless further evidence was presented bearing upon the teacher's unfitness to teach, an inference of such unfitness justifying revocation of his teacher's certificate could not be drawn from the homosexual conduct alone.

Whatever an intermediate appellate court may think of the reasoning or the result of a decision of our Supreme Court, the intermediate court is bound by such decision and, until changed, must follow the rule stated therein. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)

Aside from the fact that *Comings* v. *State Bd. of Education, supra,* 23 Cal.App.3d 94 (hg. den.) related to teachers and State Board of Education proceedings, the factual situation there was almost identical to that in the case at bench and therefore is of significant precedential value.

In that case two separate and distinct disciplinary proceedings (*Comings* and *Jones*) were consolidated for hearing on appeal because of the questions common to both. In each, there was a conviction for possession of marijuana. In each, punitive action was taken against the teacher by administrators and the action was affirmed by the superior court.

In the *Comings* case there had been no evidence produced aside from his conviction of possession of marijuana. The court held that the conviction alone did not constitute substantial evidence of unfitness to teach and reversed the judgment. In doing so, the court said: "Whether Comings' conduct 'adversely affected students or fellow teachers,' or in what 'degree' . . ., is not even suggested by the record; the latter, in fact, does not show whether or where he taught in a California public school at any time, thus precluding any inference as to the relevant notoriety of his conduct. No inquiry was made into 'extenuating or aggravating circumstances, if any,

surrounding the conduct,' the likelihood of its recurrence, or Comings' motives. . . . The record contains even less evidence of his 'unfitness to teach' than appeared in the record held insufficient in *Morrison*; it thus falls short of the showing required, under the *Morrison* test, to support revocation of his certification documents." (23 Cal.App.3d at pp. 104-105.)

In the *Jones* case the judgment dismissing the teacher was affirmed based upon a finding of substantial evidence of his unfitness to teach. The substantial evidence consisted of not only the conviction of possession of marijuana but also the testimony of a vice principal of the school where Jones had been employed. The testimony in substance was that Jones was unfit and included valid reasons for this conclusion.

From these authorities we distill these principles: in order to save Government Code section 19572, subdivision (t), from being unconstitutionally vague it must be applied to appellant in light of the type of employment he was engaged in (enforcing the tax laws; see fn. 1) to determine whether or not his alleged failure of good behavior (possession of marijuana) was of such a nature that it caused discredit to his agency or his employment, and that there must be a rational relationship between the goal which Government Code section 19572, subdivision (t), seeks to achieve and the failure of good behavior.

In some factual contexts the obviousness of such relationship is clear. For example, *Orlandi* v. *State Personnel Bd., supra,* 263 Cal.App.2d 32—wherein there was "ticket fixing" by a California Highway Patrol officer; and *Nightingale* v. *State Personnel Board, supra,* 7 Cal.3d 507—wherein a referee employed by the Division of Industrial Accidents intervened with other referees and the Attorney General in an effort to obtain special treatment for a friend. In the case at bench, if the appellant had been an officer with the Bureau of Narcotic Enforcement, there could be little question that the conviction of possession of marijuana alone would justify disciplinary action.

However, there is no such obvious relationship between possessing marijuana off the job and the duties of a tax representative trainee. Under the mandate of *Morrison* and the holding in *Comings,* we are constrained to conclude that conviction of possession of marijuana off the job does not, without more, establish a sufficient probative nexus between the failure of good behavior and a finding of discredit to the agency or employment to justify disciplinary action. Under these authorities, possession of marijuana in private, without more, does not *ipso facto* cause discredit to the agency for which appellant works or to his employment. Additional

proof should be presented bearing upon the relationship between the failure of good behavior and the alleged harm to the public service and whether the failure of good behavior can reasonably result in the impairment or disruption of the public service. Such proof could include, but is not necessarily limited to, whether there are extenuating or aggravating circumstances surrounding the conduct, the likelihood of its recurrence, the proximity or remoteness in time of the conduct,' the notoriety of the conduct, and the reasonable likelihood that as a result of the conduct the tax enforcement function of the agency (see fn. 1) would be impaired.

While we are compelled to reverse the judgment, a paraphrase of the language of the *Morrison* court (1 Cal.3d at pp. 239-240) is appropriate: "Our conclusion affords no guarantee that . . . [appellant cannot be disciplined]. If the . . . [State Personnel Board] believes that . . . [appellant has violated Government Code section 19572, subdivision (t)], it can reopen its inquiry. . . . Finally, we do not, of course, hold that . . . [marijuana offenders] must be permitted to . . . [work in public employment]. As we have explained, the relevant statutes, as well as the applicable principles of constitutional law, require only that the board properly find, pursuant to the precepts set forth in this opinion, that . . . [under Government Code section 19572, subdivision (t) an individual's misbehavior be proven by probative evidence (Gov. Code, § 11513) or official notice (Gov. Code, § 11515), or both, to cause discredit to his agency or his employment]. Whenever disciplinary action rests upon such grounds and has been confirmed by the judgment of a superior court following an independent review of the evidence, this court will uphold the result."

Inasmuch as there may be further proceedings herein, we treat two other points raised by appellant.

■ At the hearing before the referee, appellant proposed to call Dave Simonian, appellant's office supervisor, and made an offer of proof that he would testify in substance that (1) appellant had always done "standard or better" work, (2) appellant had attended social gatherings with other office personnel, and (3) no letters, calls or other indications of actual discredit to the department had been received concerning appellant's conduct or conviction.

The offer was rejected by the referee. As to the testimony regarding the quality of work of appellant, the board assumed appellant was doing at least standard work. The offer was therefore irrelevant and properly rejected unless and until the agency made a showing that appellant's performance was substandard.

Appellant's attendance at social gatherings was irrelevant and was properly rejected.

The proposed testimony regarding no actual indication of discredit to the agency should have been allowed. While it is true that the respondent board did not have to allege and prove actual discredit to the agency (*Nightingale* v. *State Personnel Board, supra,* 7 Cal.3d 507, 513-514), the gravamen of the charge is that from the misbehavior alone an inference may be drawn that the agency or his employment was discredited. Proof by appellant that there was no actual discredit is admissible, not only to rebut that inference, but as evidence tending to show that appellant's conduct would not cause future discredit.

■ Lastly, appellant contends that the penalty of dismissal is too harsh as a matter of law and constitutes an abuse of discretion. Obviously, reasonable minds might differ as to the propriety of the penalty imposed; under these circumstances, the matter is one within the discretion of the administrative agency and its decision will not be disturbed either by the trial court or appellate court. (*Nightingale* v. *State Personnel Board, supra,* 7 Cal.3d 507, 514-516; *Cadilla* v. *Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 966-967 [103 Cal.Rptr. 455]; *Hopper* v. *State Personnel Board* (1962) 204 Cal.App.2d 273, 275 [22 Cal.Rptr. 88].)

The judgment of the superior court denying the writ of mandate is reversed and the cause is remanded to the superior court for proceedings consistent with this opinion.

Gargano, J., and Franson, J., concurred.